IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT ROBLIN,

    Plaintiff,

v.

NEWMAR CORPORATION
and FREIGHTLINER CUSTOM
CHASSIS CORPORATION,

    Defendants.

No. 6:17-cv-01902-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Robert Roblin brings this federal and state law action for breach of express warranty against Newmar Corp. ("Newmar") and Freightliner Custom Chassis Corp. ("FCCC"). The case comes before the Court on FCCC's motion to dismiss for lack of personal jurisdiction. At issue is whether the Court's exercise of personal jurisdiction over FCCC pursuant to Oregon's long-arm statute would comport with due process. The Court concludes that it would not. Mr. Roblin fails to show that FCCC is at home in Oregon and therefore subject to general personal jurisdiction. He also fails to show that FCCC purposefully availed itself of the privilege of doing business in Oregon, which would allow for the exercise of specific personal jurisdiction. The motion is therefore GRANTED and FCCC is DISMISSED from the case without prejudice.

**BACKGROUND**

    Mr. Roblin is a Washington resident who purchased a Recreational Vehicle ("RV") from non-party Guaranty RV in Junction City, Oregon in October 2015. When Mr. Roblin began experiencing mechanical and service-related issues with his RV, he filed the instant action

Page 1 – OPINION AND ORDER

against Newmar and FCCC for violations of the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, Oregon Lemon Law Act, Or. Rev. Stat. § 646A.400 *et. seq.*, and Oregon Consumer Warranty Act, Or. Rev. Stat. § 72.8100 *et. seq.*

The RV Mr. Roblin purchased was manufactured by Newmar and incorporated a chassis manufactured by FCCC. Newmar is an Indiana corporation with its principal place of business in Indiana. It manufactures RVs which sometimes incorporate chassis purchased from FCCC. Newmar is not a subject of the present motion and will remain as a defendant in the lawsuit. FCCC is a Delaware corporation with its principal place of business in South Carolina. FCCC designs and manufactures custom chassis for RVs, which it then sells to RV manufacturing clients, including Newmar. It is a wholly owned subsidiary of non-party Daimler Trucks North America LLC ("Daimler"), but has its own President and Chief Executive Officer ("CEO").

The FCCC chassis in Mr. Roblin's RV came with an express warranty, which requires, *inter alia*, that all necessary inspections and repairs be completed at an FCCC "authorized repair location." There are eight such locations in Oregon. Mr. Roblin has, on at least one occasion, serviced his RV at an Oregon repair center. These FCCC-authorized service centers use Freightliner branding, carry Freightliner parts, and communicate with FCCC directly regarding procurement of parts and some repairs. FCCC's website also boasts that chassis owners "have access to the industry's largest network, comprised of more than 450 Freightliner-branded service centers throughout North America," and lists eight authorized locations in Oregon.

FCCC represents that the authorized service centers are independently owned and operated, and that it does not have any "direct contracts" with the service centers. It also represents that it has never delivered, sold, designed, or manufactured any good or product in Oregon; transacted business in Oregon; been licensed to do business in Oregon; paid taxes in

Oregon; made any contracts in Oregon; owned, used, possessed, leased, or rented any real estate in Oregon; had any directors, officers, or employees based in Oregon; or directed any advertising or marketing efforts to residents or businesses in Oregon.

## DISCUSSION

FCCC moves the Court to dismiss it from the case for lack of personal jurisdiction. Where, as here, there is no applicable federal statute governing personal jurisdiction, a district court must apply the law of the state in which it sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Panvasion Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Oregon law authorizes personal jurisdiction to the full extent permitted by the Due Process Clause of the U.S. Constitution. *See* Or. R. Civ. P. 4L. To comport with the requirements of due process, a court may only exercise personal jurisdiction over a non-resident defendant if that defendant has sufficient "minimum contacts" with the forum state, such that the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted). A defendant's minimum contacts may be established through a showing of either general or specific jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Since Mr. Roblin alleges both bases for personal jurisdiction over FCCC, the Court addresses each in turn.

I. <u>General Personal Jurisdiction</u>.

Mr. Roblin first argues that FCCC is subject to general personal jurisdiction in Oregon. A defendant is subject to general jurisdiction if its contacts with the forum state are "so continuous and systemic as to render it essentially at home there." *Daimler v. Bauman*, 571 U.S. 117, 127 (2014) (citations and quotation marks omitted). In general, a corporate defendant will satisfy this standard only if it is incorporated or has its principle place of business in the forum

state. *Id.* at 137-38. Under certain circumstances, however, the contacts of a parent company, independently at home in the forum state, may be imputed to a non-resident subsidiary. *Doe v. Unocal Corp.*, 248 F.3d 915, 925-26 (9th Cir. 2001). Such contacts may only be imputed if the defendant subsidiary is an "alter ego" of the parent. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1072-73 (9th Cir. 2015). This requires (1) that there be such "unity of interest and ownership that the separate personalities of the two entities no longer exist" and (2) that treatment of the two entities as separate identities "would result in fraud or injustice." *Id.* at 1073. This is a high bar and a parent-subsidiary relationship, even combined with "total ownership and shared management personnel," is insufficient to permit the imputation of a parent company's contacts. *Id.*

Here, there is no evidence that FCCC has sufficient contacts to support general jurisdiction in Oregon. As Mr. Roblin acknowledges, FCCC is neither incorporated in Oregon nor does it have its principle place of business in the state. There is also no evidence that FCCC is otherwise "at home" in Oregon or an "alter ego" of its Oregon-based parent company, Daimler. Although FCCC is a wholly-owned subsidiary of Daimler and sometimes held out as a brand of its parent company, Mr. Roblin fails to show that the two companies disregard their respective corporate formalities and FCCC presents uncontroverted evidence that each employs its own President and CEO. On these facts, it would be inconsistent with due process for the Court to exercise general jurisdiction over FCCC.

Mr. Roblin nevertheless requests that the Court allow jurisdictional discovery to clarify whether FCCC is an alter ego of Daimler. A grant of jurisdictional discovery is within a district court's discretion and requires "more than a hunch that [discovery] might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). As noted above, Mr. Roblin offers little more than bare assertions that Daimler controls FCCC—there is no

evidence to suggest that Daimler "dictates every facet of [FCCC's] business." *Ranza*, 793 F.3d at 1074. His request for jurisdictional discovery is therefore denied.

II. Specific Personal Jurisdiction.

Mr. Roblin also argues that FCCC is subject to specific personal jurisdiction in Oregon. In the Ninth Circuit, courts apply a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation and quotation marks omitted). A plaintiff bears the burden of establishing the first two elements of the test, after which the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewic*, 471 U.S. 462, 477 (1985). "[I]f the plaintiff fails at the first step," however, "the jurisdictional inquiry ends." *Boschetto*, 539 F.3d at 1016.

With respect to the first element, which examines the nature of a defendant's contacts with the forum state, the Ninth Circuit generally analyzes cases sounding in tort and contract differently. *Doe v. Unocal*, 248 F.3d 915, 924 (9th Cir. 2001). As relevant here, cases sounding in contract are analyzed under a "purposeful availment" standard. *Id.* The purposeful availment standard focuses on "whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). Specifically, to have purposefully availed itself of conducting activities in the forum, a defendant must have "performed some type of affirmative conduct which allows or

promotes the transaction of business within the forum state." *Sher v. Johnson*, 9111 F.2d 1357, 1362 (9th Cir. 1990). This focus on the "affirmative conduct of the defendant is designed to ensure that the defendant is not haled into court as a result of random, fortuitous, or attenuated contacts." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990).

A showing that the defendant purposefully availed itself of the privilege of conducting activities in the forum state "typically consists of the defendant's actions in the forum," such as "executing a contract there" or conducting "other business" within the state. *Schwarzenegger*, 374 F.3d at 802. The formation of a single contract with a resident of the forum state is "not, *standing alone*, sufficient to create jurisdiction." *Boschetto*, 539 F.3d at 1016 (citing *Burger King Corp.*, 471 U.S. at 478) (emphasis added). Instead, the contract must arise from a defendant's solicitation of business in the forum state, *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222-23 (1957), or otherwise give rise to or reflect a "substantial connection" with the state and create "continuing obligations" between the defendant and a resident of the forum, *Burger King Corp.*, 471 U.S. at 475-76. It is these circumstances surrounding a contractual relationship, including "prior negotiations[,] contemplated future consequences, . . . the terms of the contract[,] . . . and the parties' actual course of dealing," which dictate whether a defendant has sufficient minimum contacts with a forum state. *Burger King Corp.*, 471 U.S. at 479.

In *Burger King*, for example, the Supreme Court found jurisdiction where the defendant entered a contract with a forum-state resident and negotiated a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with [plaintiff] in [the forum state]." 471 U.S. at 480. In doing so, it was careful to distinguish the defendant's repeated contacts arising out of this deliberately-structured arrangement from "single or occasional acts" of a "nature and quality" reflecting only "attenuated affiliation with the forum." *Id.* at 475 n.18

(citation and quotation marks omitted). For instance, in *World-Wide Volkswagen Corp. v. Woodson*, the Court declined to find jurisdiction where the plaintiff unilaterally transported an automobile manufactured by the defendant into the forum state. 444 U.S. 286, 298-99 (1980). The Court explained that, although the defendant "facilitated" automobile sales by authorizing independent service centers in the forum state, this was merely a "collateral relation" with insufficient "financial benefits" to generate jurisdiction. *Id.* As it later clarified, a plaintiff must point to "additional conduct" evidencing a defendant's intent to serve the forum market, such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987).

Here, Mr. Roblin fails at step one of the jurisdictional test. As he recognizes, the parties' one-off unilateral contract is alone insufficient to create jurisdiction. He instead points to the ongoing relationship contemplated by the warranty and FCCC's attempt to facilitate that relationship in Oregon by authorizing service locations and listing them on its website.[1] The agreement, consummated in Oregon solely by the unilateral act of Mr. Roblin and after FCCC had placed its warrantied product into the stream of commerce, falls short of the "substantial connection" contemplated in *Burger King*. Indeed, whereas the defendant in *Burger King* negotiated his contract with a forum-state corporation, entered a carefully structured 20-year relationship with that corporation, and assented to a forum selection clause in their agreement, Mr. Roblin's agreement involved no negotiations, contemplated only a limited relationship, and

---

[1] Mr. Roblin seems to imply that the service centers are agents of FCCC and that the Court may impute their Oregon contacts to FCCC for the purpose of specific jurisdiction. The use of an agency theory to find specific jurisdiction was recently rejected by the Ninth Circuit. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

was in no way specific to Oregon or its residents. The relationship established by the warranty was specific to the parties—neither of which reside in Oregon—and not the forum state.

The presence of independent authorized service centers in Oregon does not change the jurisdictional calculus. As the Supreme Court noted in *World-Wide Volkswagen*, the unilateral creation of a forum-state contact, even when coupled with a defendant's authorization of independent service centers, is insufficient to create jurisdiction. Although this Court is sympathetic to Mr. Roblin's argument that the existence and online listing of the service centers acted as an enticement to people in Oregon who might be contemplating purchase of warrantied FCCC products, there is little to suggest that FCCC sought to avail itself of the Oregon market specifically. The warranty makes no mention of Oregon and the uncontroverted evidence reflects that the service centers, like FCCC's products, exist in Oregon only by virtue of decisions taken by entities other than FCCC. Defendant has no control over the service centers and, as in *World-Wide Volkswagen*, they create only a "collateral relation" to Oregon. To find otherwise would allow for jurisdiction over most automotive manufacturers—a result clearly at odds with the Supreme Court's stream of commerce precedent—who likewise authorize service facilities, fulfil orders for parts, and offer informational materials on their websites.

Mr. Roblin attempts to distinguish *World-Wide Volkswagen* and its progeny because they arise in the products liability context. He is right that, as noted above, the Ninth Circuit generally distinguishes between tort and contract actions, but the Ninth Circuit has, on at least one occasion, applied stream of commerce principles in the purposeful availment context, *see Holland Am. Line, Inc. v. Wartsila North Am., Inc.*, 485 F.3d 450, 459-60 (9th Cir. 2007), and, in any event, the Court finds the stream of commerce precedent relevant to the facts of this case. It makes sense, as a practical matter, to consider stream of commerce precedents because a

warranty travels in the same manner as the product to which it is attached. In addition, at a conceptual level, stream of commerce cases are not unique in their aversion to contacts created by the unilateral act of a plaintiff—contract cases are equally focused on the defendants' conduct. *See, e.g.*, *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). To wholesale disregard relevant principles from these cases would be overly formalistic. The Court therefore finds that it would be inconsistent with due process to exercise specific jurisdiction over FCCC.

## CONCLUSION

For the foregoing reasons, FCCC's motion to dismiss for lack of personal jurisdiction is GRANTED and it is DISMISSED from the case without prejudice.

IT IS SO ORDERED.

DATED this 10th day of July, 2018.

/s/Michael J. McShane
Michael J. McShane
United States District Judge