**Renée E. Rothauge, OSB #903712**
ReneeRothauge@MarkowitzHerbold.com
**Michael S. Wilcox,** *pro hac vice*
MichaelWilcox@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, Oregon 97204-3730
Telephone: (503) 295-3085
Fax: (503) 323-9105

*Attorneys for Plaintiff Robert Roblin*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **ROBERT ROBLIN,** an individual, | Case No.: 6:17-cv-1902-MC |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | **MAGNUSON-MOSS WARRANTY ACT (15 U.S.C § 2301, *et seq*.); AND STATE CLAIMS** |
| **NEWMAR CORPORATION,** an Indiana corporation, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

Robert Roblin (hereinafter "Roblin") files this First Amended Complaint and Demand for Jury Trial against Newmar Corporation ("Newmar") for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 and related State claims. Roblin alleges on information and belief as follows:

## PARTIES

1.  At all times material herein, Roblin was a resident of the State of Washington and maintained additional residences in California.

2.  Newmar is an Indiana corporation that manufactures, sells, and advertises for sale

recreational vehicles, throughout the United States.  Newmar conducts business, including the sale and advertisement for sale of recreational vehicles, in Oregon and California.  Newmar does not have a registered agent for service of process within the state of Oregon.  Newmar may be served through its registered agent, Thorne Grodnik, LLP, c/o Glenn L. Duncan, 228 West High Street, Elkhart, IN 46516.

## JURISDICTION

3. Jurisdiction of this Court arises under 15 U.S.C. § 2310(d) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction for Oregon and California claims pursuant to 28 U.S.C. § 1367.  As required by 15 U.S.C. § 2310(d)(3), Roblin seeks relief in excess of $25 per claim for each individual claim and in excess of $50,000.00, cumulative, for all claims.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) Newmar is actively doing business in this State and subject to personal jurisdiction throughout the State; (ii) Newmar has advertised goods for sale within the District and has sold or facilitated the sale of its goods to residents of this District; (iii) Newmar has committed illegal acts in the District through its sales and advertisements and/or has provided defective products to residents of this District; and (iv) a substantial part of the events or omissions giving rise to the claim occurred within this District.

## GENERAL ALLEGATIONS

5. On or about October of 2015, Roblin took delivery of a new 2016 London Aire recreational vehicle, having VIN No.: 4UZFCTBG1GCHL7485 (the "Recreational Vehicle" or "RV"), that he had purchased from Guaranty RV, Inc. ("Guaranty RV") in Junction City, Oregon for approximately $480,030.00 ($516,393.00 with applicable tax, title, and license fees incurred while registering in Washington).

6. Newmar manufactured the RV.

7. The RV was sold with an express limited warranty warranting the chassis portion of the RV as well as with an express limited warranty warranting the coach portion of the RV. At all times material herein, the RV was covered by these warranties.

## MULTIPLE BREAKDOWNS AND REPAIR ATTEMPTS

8. Prior to Roblin taking delivery of the RV, Newmar had caused the vehicle to be driven from its place of manufacture in Indiana to the Newmar dealership in Junction City, Oregon. On or about September 30, 2015, during this transit, the RV's engine overheated and Newmar had to repair the engine's cooling system.

9. Following delivery to Roblin, the RV suffered numerous failures of its various systems, including the engine cooling system, the cockpit electrical system, the hydraulic leveling system, and the room extension slide out system. The RV also had numerous fit and trim defects.

10. The repeated failures of the cooling system were the result of flaws in the manufacture and design of various components of that system. These flaws manifested themselves in a pattern of repeated breakdowns, unsuccessful repair attempts, and lengthy warranty service periods.

11. Individual breakdowns and associated repair attempts include, but may not be limited to, the following:

   A. On or about November 4, 2015, Roblin took the RV to the Oregon Motor Coach service center in Eugene, Oregon to correct a problem with the vehicle's hydraulic leveling system. Roblin notified Newmar of the defects requiring service. Roblin was unable to use the recreational vehicle for one (1) day because of this warranty repair.

   B. On or about November 6, 2015, the RV's engine overheated during normal use on a highway in northern California. Roblin reported the problem to Newmar and worked with Newmar customer service representatives to formulate a plan to transport the RV to a service center in Redding, California. To get to Redding, Roblin drove the RV in 20 minute intervals until it overheated. Roblin would then pull off the road to wait a like amount of time for the engine to cool down before restarting the RV and continuing on. Roblin continued this stop-and-start driving for several hours until he reached a Newmar authorized service center. As part of the attempted solution to the overheating problem, the service center set the radiator fan to permanently operate in a

high-capacity mode, which also resulted in diminished fuel efficiency. Roblin was unable to use the recreational vehicle for one (1) day because of the breakdown and repair.

  C. On or about November 30, 2015, while Roblin was driving up an incline, the RV again overheated. Upon inspecting the engine, Roblin observed coolant leaking onto the ground, a disconnected coolant hose, and damage to the fan belt. Roblin called Newmar who arranged for roadside service that allegedly repaired the problem.

  D. On or about December 4, 2015, Roblin drove the RV to Cummins Pacific service center in Fresno, California for warranty service on the cooling system. Roblin notified Newmar, who helped to coordinate the service. The service center discovered numerous faults of the cooling system, and replaced certain parts, but was unable to successfully repair the system and advised sending the RV to a different shop for further repairs. The service center further advised that the RV should not be driven. Because of these repairs, Roblin was deprived of the use of the RV for five (5) days.

  E. On or about December 9, 2015, the RV was towed to Fresno Truck Center in Fresno, California from the Cummins Pacific service center for further repairs. Fresno Truck Center repaired and replaced the fan clutch assembly, a component of the cooling system, and released the RV to Roblin on December 11, 2015. The RV was in the shop and Roblin was unable to use it for three (3) days because of this repair.

  F. On or about December 13, 2015, following its release to Roblin just days before, the RV again overheated while driving up an incline. Roblin notified Newmar, and the RV was towed to Bakersfield Truck Center in Bakersfield, California where it underwent further warranty service to repair the cooling system, the electrical system, the battery system, and various problems with the onboard computer and cockpit dashboard gauges. While the RV was being repaired in Bakersfield, Roblin was deprived of its use for thirty-two (32) days.

  G. On or about July 20, 2016, Roblin sought further warranty service to address various issues, including problems with the cockpit electrical system and further

problems with the hydraulic leveling and air suspension systems. Newmar transported the vehicle from Oregon to its service center in Indiana to perform this work. While performing this service, Newmar discovered significant damage to the cooling system that required additional repair. The vehicle was also damaged by Newmar in transit, requiring Newmar to perform body repairs. In total, Roblin was deprived of the use of the RV for fifty-two (52) days as a result of this warranty work performed by Newmar.

        H.     On or about June 2, 2017, Roblin drove the RV to Oregon Motor Coach Center in Eugene, Oregon, to repair multiple warranted systems, including the cooling system, the hydraulic leveling system, the engine air filter gauge, the front windshield visor, the driver's dashboard, and components of the RV living facilities. In total, because of these warranty repairs, Roblin was deprived of the use of the RV for twenty-seven (27) days.

        I.     On or about July 23, 2017, a catastrophic cooling system failure rendered the vehicle inoperable by causing physical damage to the fan, fan cage, fan shroud, and other cooling system components. Roblin notified Newmar and the vehicle was towed to a Newmar authorized service center in Oregon. Because of the number of failed repair attempts on the cooling system, Roblin requested that the repairs be delayed pending an independent technical inspection of the RV. Following that inspection, the shop proceeded with repairs. The RV was unavailable to Roblin due to such repairs for nineteen (19) days.

12.     Roblin timely performed all scheduled maintenance and otherwise cared for the RV as recommended by Newmar in its product literature.

13.     As a proximate result of Newmar's failure to tender the RV to Roblin free of manufacturing and design defects, the RV was in the shop for repair to warranted systems and Roblin was deprived of its use for over one hundred forty (140) days during Roblin's first two years of ownership and while the RV's mileage was less than 24,000 miles.

14. Prior to the expiration of Roblin's first two years of ownership of the RV and while the RV's mileage was less than 24,000 miles, more than three failed attempts were made to repair one or more of the RV's warranted systems.

## NEWMAR'S ADVERTISING MISREPRESENTATIONS

15. Newmar emphasized a large service network populated with well-trained technicians as a significant selling point of the RV. On its website in 2015, Newmar made the following assertions:

> We stand behind our work with dependable warranties, so you can enjoy extra confidence and protection. So if you take your Newmar RV on a cross-country vacation, on a multistate tour, or if you just go over to the neighbors' to show it off a little bit, you'll always travel with confidence.

16. Freightliner Custom Chassis Corporation, the chassis warranty service provider for the RV, advertised in its promotional materials that owners of the RV would have access to "the industry's largest service network, comprised of more than 450 Freightliner-branded service locations" and particularly emphasized that such service locations would have "specially trained service technicians."

17. Newmar represented to Roblin that its service network was of the highest quality, both through its written advertising as well as through the oral representations of sales agents, at its authorized dealership.

18. The foregoing assertions were made to Roblin and the general public by Newmar to induce sales of recreational vehicles. Roblin relied upon the foregoing representations in making his decision to purchase the RV.

19. The foregoing assertions were in fact false. The true facts were that personnel at the various authorized service centers, including service centers in both Oregon and California, repeatedly demonstrated that they were not properly trained and lacked the expertise to provide the high level of service promised.

20. Examples of such service failures include, but are not limited to, the following:

    A. Multiple authorized service centers failed to provide the electrical hook-ups and knowledge of the electrical system required to preserve the RV's "house

batteries." On two separate occasions, Roblin retrieved his RV from authorized service centers with drained house batteries that would no longer take and hold a charge. Because these house batteries power the living facilities of the RV, Roblin was unable to use and enjoy those facilities thereafter, and engaged in protracted and difficult service requests to replace ruined batteries.

      B.      Throughout the multiple break downs of the cooling system, the personnel at the authorized service centers failed to recognize that a cooling system design flaw was causing such breakdowns and repeatedly made temporary fixes, such as replacing fan belts and re-programming the operating mode of the cooling system. These technicians should have known that such temporary fixes would not permanently resolve the problem and would only lead to repeated failures and repairs.

      C.      On at least one occasion, while attempting to transport the RV from the location where it broke down to an authorized service center, Newmar arranged for a towing service that had neither the training nor equipment needed to safely transport the vehicle. Roblin believes that on several occasions, his time waiting for such transport, often at unsafe locations at night on the side of the road, was prolonged by Newmar's failure to have properly trained and equipped personnel available to transport the RV.

**ROBLIN'S ATTEMPTS TO NEGOTIATE A REMEDY**

21. Throughout the history of this troubled vehicle's life, Roblin repeatedly attempted to obtain a refund from Newmar or have the RV replaced. Newmar and its agents declined to provide such remedies.

22. Newmar and its component manufacturers did, however, extend their warranties voluntarily in response to Roblin's demands and they did so without any consideration. As a result, the RV was covered by those warranties at all times referenced herein.

23. Roblin's attorney provided Newmar with direct written notification of the warranty nonconformities that are the basis of the claims stated herein and provided Newmar with the opportunity to address such claims. Such written notification includes, but is not limited

to, letters dated August 28, 2017 and November 8, 2017, sent by Roblin's then attorney. Roblin has also unsuccessfully sought alternative remedies, such as arbitration, to resolve this matter.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq*.)

24. Roblin incorporates and re-alleges by this reference, as though fully set forth herein, each allegation contained in the foregoing paragraphs.

25. Roblin is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter the "MMWA"), 15 U.S.C. § 2301(3).

26. Newmar is a "warrantor" and/or "supplier" as defined in the MMWA, 15 U.S.C. § 2301(4) and (5).

27. The RV is normally and was used by Roblin for personal purposes and is, therefore, a "consumer product" as defined in the MMWA, 15 U.S.C. § 2301(l).

28. The express warranties pertaining to the RV are "written warranties" as defined in the MMWA, 15 U.S.C. § 2301(6).

29. Newmar's failure to tender the RV to Roblin free of defects and failing and refusing to repair the defective RV constitutes a breach of the written and implied warranties covering the RV and is a violation of the MMWA, for which Roblin is entitled to recover his damages under 15 U.S.C. § 2310(d)(1) or a full refund under 15 U.S.C. § 2304(a)(4).

30. Roblin has performed all things agreed to and required of him under the purchase agreement and warranty, except as may have been excused or prevented by Newmar's conduct.

31. The amount in controversy in this action exceeds the sum of $50,000, exclusive of interest and costs, for these claims.

32. As a direct, legal, and proximate result of Newmar's wrongful conduct in violation of the Magnuson-Moss Warranty Act, Roblin has suffered damages as described herein and is entitled to the judgment, relief, and remedies hereinafter set forth.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF THE OREGON LEMON LAW ACT

### (ORS 646A.400, *et seq.*)

33. Roblin incorporates and re-alleges by this reference, as though fully set forth herein, each allegation contained in the foregoing paragraphs.

34. The RV is a motor vehicle built on and attached to a self-propelled motor vehicle chassis that is designed to provide temporary living quarters for recreational, camping, or travel use. The RV, therefore, constitutes a "motor home" as defined in ORS 646A.400(3).

35. Roblin primarily uses the RV for personal, family, and household purposes.

36. Newmar's inability, directly and through its agents and authorized service centers, to conform the RV to the express warranties is a violation ORS 646A.400, *et seq.* More specifically:

    A. Newmar has been unable to conform the Recreational Vehicle despite notice and reasonable attempts by its agents to do so, pursuant to ORS 646A.404.

    B. Newmar, despite notice from Roblin that the Recreational Vehicle was a lemon, has not engaged in any alternative dispute resolution or made available any of the remedies outlined in ORS 646A.408.

37. Roblin would not have purchased the RV had he known that he would not have a vehicle that conformed to the express warranties nor would he have purchased the vehicle had he known that he would be deprived of the use of the vehicle for more than one hundred forty (140) days during the first two years of his ownership of the vehicle.

38. As a direct, legal, and proximate result of Newmar's wrongful conduct in violation of the Oregon Lemon Law Act, Roblin has suffered damages as described herein and is entitled to the judgment, relief, and remedies hereinafter set forth.

/////

/////

/////

# THIRD CAUSE OF ACTION

# VIOLATIONS OF THE OREGON CONSUMER WARRANTY ACT

# (ORS 72.8010, *et seq*.)

39. Roblin incorporates and re-alleges by this reference, as though fully set forth herein, each allegation contained in the foregoing paragraphs.

40. Newmar is liable to Roblin for violating the Oregon Consumer Warranty Act (ORS 72.8010 *et seq*.).

41. The RV meets the definition of a "good" and or "consumer good" as set forth by ORS 72.8010(1). Roblin is a "buyer" or "retail buyer" as defined by ORS 72.8010(2). Newmar is a "manufacturer" as defined by ORS 72.8010(3).

42. Newmar has failed to provide a good or consumer good (the RV) in compliance with each applicable express and implied warranty. In particular, and without limitation, Newmar has failed to provide a good or consumer good that complies with the implied warranties of merchantability and fitness.

43. As a direct, legal, and proximate result of their wrongful conduct in violation of the Oregon Consumer Warranty Act, Roblin has suffered damages as described herein and is entitled to the judgment, relief, and remedies hereinafter set forth.

# FOURTH CAUSE OF ACTION

# VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW

# (California Business & Professions Code 17200, *et seq*.)

44. Roblin incorporates and re-alleges by this reference, as though fully set forth herein, each allegation contained in the foregoing paragraphs.

45. Section 17200 *et seq*. of the Cal. Bus. & Prof. Code ("California Unfair Competition Law") prohibits an "unlawful", "unfair", and "fraudulent" business practices. The California Unfair Competition Law incorporates California's False Advertising Law, found in Cal. Bus. & Prof. Code § 17500, which explicitly prohibits unfair, deceptive, untrue, or misleading advertising.

46. Newmar has violated the California Unfair Competition Law's prohibition against unlawful acts by making false and misleading representations to both Roblin and California consumers about the quality of the Newmar service network, customer service operations, products, and warranties.

47. Roblin relied upon the false and misleading representations in making his decision to purchase the RV and would not have purchased the RV but for such false and misleading advertising.

48. As a direct, legal, and proximate result of their wrongful conduct in violation of the California Unfair Competition Law, Roblin has suffered damages as set forth herein and is entitled to the judgment, relief, and remedies hereinafter set forth.

## DEMAND FOR JURY TRIAL

Roblin demands a jury trial on all issues so triable.

## PRAYER

WHEREFORE, Roblin prays for judgment against Newmar as follows:

1) On his first claim for violations of the Magnuson-Moss Warranty Act:

   a. For rescission of the sale of the RV and the refund of Roblin's purchase price in the amount of $516,393.00 or, in the alternative, damages in an amount to be determined by a jury;

   b. Statutory damages as determined by the Court; and

   c. Reasonable attorney's fees and costs.

2) On his second claim for violations of the Oregon Lemon Law Act:

   a. For rescission of the sale of the RV and the refund of Roblin's purchase price in the amount of $516,393.00, less any reasonable allowance for Roblin's use of the vehicle or, in the alternative, damages in an amount to be determined by a jury;

b. An amount sufficient to reimburse Roblin for his out of pocket expenses for transporting the Recreational Vehicle for repairs, as well as other ancillary expenses, to be determined by a jury;

c. An additional amount not to exceed $50,000 pursuant to ORS 646A.412; and

d. Reasonable attorney's fees and costs.

3) On his third claim for violations of the Oregon Consumer Warranty Act:

a. For rescission of the sale of the RV and a return of the full purchase price in the amount of $516,393.00, less any amounts for reasonable use or damages caused by Roblin.

4) On his fourth claim for violations of the California Unfair Competition Law:

a. For rescission of the sale of the RV and a return of the full purchase price in the amount of $516,393.00, less any amounts for reasonable use or damages caused by Roblin.

b. For an order enjoining Newmar's misleading advertising pertaining to the quality and servicing of its recreational vehicle products.

5) On all claims for relief:

a. Costs and expenses incurred in this action; and

b. Such other remedies that the Court may deem just and equitable.

Dated this 3rd day of December 2018.

        MARKOWITZ HERBOLD PC

By: *s/ Michael S. Wilcox*

Renée E. Rothauge, OSB #903712
ReneeRothauge@MarkowitzHerbold.com
Michael S. Wilcox, *pro hac vice*
MichaelWilcox@MarkowitzHerbold.com
(503) 295-3085

*Attorney for Plaintiff Robert Roblin*

ROBLNE\811252