IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT ROBLIN,

      Plaintiff,

      v.

NEWMAR CORPORATION,

      Defendant.

_____

No. 6:17-cv-01902-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

Before the Court are cross-motions for partial summary judgment between Third-Party Plaintiff Newmar Corporation ("Newmar") and Third-Party Defendant Freightliner Customer Chassis Corporation ("FCCC"). *See* ECF No.'s 171 & 173. Because the Customer Sales Agreement ("Agreement") entitles Newmar to contractual indemnity, its Motion for Partial Summary Judgment (ECF No. 173) is GRANTED and FCCC's Motion for Partial Summary Judgment (ECF No. 171) is DENIED.

## BACKGROUND

Robert Roblin bought a Recreational Vehicle ("RV") manufactured by Newmar. The chassis of the RV was manufactured by FCCC. After experiencing mechanical and service-related issues with his RV, Mr. Roblin sued Newmar and FCCC. The Court dismissed FCCC from Mr. Roblin's original complaint for lack of personal jurisdiction. *See* ECF No. 22. After FCCC's dismissal, Newmar sent FCCC the following notice:

> Although FCCC clearly has been aware of the litigation by Mr. Roblin since at
> least early 2018, please consider this letter to constitute notice pursuant to ORS

72.6070(5)(a)[1] of the litigation. Further, pursuant to that statute, please be advised that FCCC may come in and defend Newmar in this litigation and, that if FCCC does not do so, FCCC will be bound in any action against FCCC by Newmar by any determination of fact common to the two litigations.

FCCC's counsel declined to step in and defend. The Court later granted Newmar's Motion for Leave to File a Third-Party Complaint against FCCC and determined that the Court had personal jurisdiction over this third-party action. *See* ECF No.'s 46 & 95. The Court then granted Mr. Roblin's motion for partial summary judgment against Newmar and awarded Mr. Roblin damages consisting of: (1) a buyback of the RV in the amount of $501,371.70; (2) prejudgment interest for $182,106.88; (3) attorney fees for $582,349.83; and (4) costs in the amount of $57,018.53. *See* ECF No.'s 100 & 155.

Newmar now seeks contractual indemnity from FCCC for all liability incurred to Mr. Roblin. FCCC and Newmar executed an Agreement for chassis on Newmar's 2015 and 2016 model year motorhomes. FCCC drafted the Agreement. The Agreement contains several pertinent provisions: (1) an express warranty provision; (2) a Limitation of Liability provision; (3) mutual indemnification provisions; and (4) an integration clause. While Newmar argues that the Agreement entitles them to indemnify FCCC for damages incurred against Newmar in the underlying proceeding, FCCC counters that the Limitation of Liability provision of the Agreement "bar[s] all potential special, indirect or consequential damages on Newmar's [claims for relief]." Third-Party Def.'s Mot. for Summ. J. 2, ECF No. 171.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict for the non-moving party. *Rivera v. Phillip*

---

[1] The parties and Court agree that Indiana law applies. Oregon and Indiana's adoption of U.C.C. § 607(5) is substantively identical.

*Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

There are two questions before the Court. First, does the Agreement allow Newmar to seek indemnity from FCCC for the damages stemming from the underlying action between Mr. Roblin and Newmar? Second, assuming Newmar can seek indemnification, does the Court's prior decision in the underlying action preclude FCCC from arguing that the damages sought were not established?

### I. Damages

Newmar's damages are recoverable under the Agreement. In Indiana, "[i]f the words of an indemnity agreement are clear and unambiguous, they are to be given their plain and ordinary meaning." *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 756 (Ind. App. 2002). The Agreement contained the following mutual indemnity provisions:

> **Indemnity Obligations:**
> • Customer agrees to indemnify and save harmless FCCC, its parents, affiliates, subsidiaries and employees from any and all liability, loss, damage or expense which may be incurred by them or any of them, including without limitation attorney fees and costs, arising out of or in connection with or related to any claim of defect in the Body or the installation of the Body, or any defect in the Chassis caused by Customer not end user.

- FCCC agrees to indemnify and save harmless Customer, its parents, affiliates, subsidiaries and employees from any and all liability, loss, damage or expense which may be incurred by them or any of them, including without limitation attorney fees and costs, arising out of or in connection with or related to (i) any claim of defect in the Chassis, except for defects caused by Customer; (ii) failure of the Chassis to perform in accordance with the warranty granted hereunder; or (iii) infringement of patent or copyright or application for them.

Aff. of Dennis Rostenbach, Ex. 1 at 3, ECF No. 172. "A contract should be construed so as to not render any words, phrases, or terms ineffective or meaningless." *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017). Courts "look to the contract as a whole . . . and accept an interpretation of the contract that harmonizes all its provisions." *Id.*

Consistent with the general principle of freedom of contract, Indiana allows parties to limit their remedies in the event of breach. *See* Ind. Code Ann. § 26-1-2-719 (West 2020). The Agreement contained the following Limitation of Liability provision:

Limitation of Liability: EXCEPT AS SET FORTH HEREIN, FCCC MAKES NO WARRANTIES TO CUSTOMER, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WITH REGARD TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. IN NO EVENT SHALL FCCC BE LIABLE FOR LOSS OF PROFIT OR GOODWILL OR OTHER SPECIAL INDIRECT OR CONSEQUENTIAL DAMAGES SUFFERED BY CUSTOMER.

Aff. of Dennis Rostenbach, Ex. 1 at 2. Though enforceable, limitations of remedy are disfavored and are strictly construed "against the seller on the basis of public policy." *Kensworth of Indianapolis, Inc. v. Seventy-Seven Limited Eyeglasses*, 134 N.E.3d 370, 379 (Ind. 2019).

Classification of damages is a question of law. The distinction between direct and consequential damages generally lies in how much the damages were foreseeable. *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 180 (Tex. App. 2012) (citing *Rexnord Corp. v. DeWolff Roberg & Assocs.*, 286 F.3d 1001, 1004 (7th Cir. 2002) (Posner, J.)).

"If the language of the contract indicates that the parties contemplated lost profits as the probable result of the breach, then those lost profits are more properly seen as a part of the contract, itself, and thus a form of direct damages." *Id.* (citing *ViaStar Energy, LLC v. Motoral, Inc.*, No. 1:05-CV-1095-DFH-WTL, 2006 WL 3075864, at *5–6 (S.D. Ind. Oct. 26, 2006)). Generally, "a claim for contractual indemnity is a claim for direct damages, not consequential damages." *KaiserKane v. N. Am. Roofing Servs., Inc.*, No. 1:15-cv-00189, 2017 WL 1293984, at *4 (W.D. N. Car. Jan. 13, 2017).

The damages Roblin sought from Newmar (a complete refund for the RV and attorney fees) are direct damages. In their Agreement, Newmar and FCCC contemplated that they may incur loss or damages to a third party such as Mr. Roblin. This is reflected in the indemnification provisions. The Agreement also included an express warranty provision where FCCC "warrant[ed] that the Chassis [would] comply with all applicable federal, state and local laws, rules and regulations" and that "[t]he Chassis will be . . . free from defects." Aff. of Dennis Rostenbach, Ex. 1 at 2. When read together, the express warranty and indemnification provisions reflect that the parties contemplated the possibility of third-party damages resulting from problems with the chassis. In other words, Newmar's liabilities to Mr. Roblin are direct damages because they were reasonably foreseeable and contemplated under the Agreement.

## II. Liability

FCCC argues that even if the Court finds that the damages alleged by Newmar are recoverable under the Agreement, summary judgment is inappropriate because there remain genuine issues of material fact. The Court disagrees.

Instead, the Court agrees with Newmar that FCCC is bound by voucher. Voucher is a mechanism that allows an indemnitee to "vouch in" an indemnitor to support its indemnification claim. Indiana has adopted the U.C.C.'s vouching-in provision verbatim:

> (5) Where the buyer is sued for breach of warranty or other obligation for which his seller is answerable over:
>
>   (a) He may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two (2) litigations, then unless the seller after reasonable receipt of the notice does come in and defend he is so bound.

IC 26-1-2-607(5)(a) (West 2020). Voucher binds the indemnitor "to any determination of fact common to the two litigations." *Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.*, 380 N.E.2d 571, 580 (Ind. App. 1978) (internal quotations omitted). The facts common to the two litigations are generally "the existence of a breach of warranty as between the voucher and the plaintiff, the fact of the voucher's liability to the plaintiff, and the amount of damages the voucher must pay as a result of the judgment against him." *Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F. Supp. 919, 924 (N.D. Ill. 1986); *see also Uniroyal*, 380 N.E.2d at 580.

Voucher serves several purposes, including "avoid[ing] duplicative litigation [, avoiding] the risk of inconsistent results in adjudicating indemnification claims," and preserving judicial resources. *Master Blaster, Inc. v. Dammann*, 781 N.W.2d 19, 26 (Minn. Ct. App. 2010) (quotation omitted); *see also Hertz Corp. v. Century Prods., Inc.*, No. C.A. 97C-05-039, 1999 WL 459291, at *2 (Del. Super. Ct. Apr. 1, 1999).

In *Hertz Corp.*, a car rental agency sued the manufacturer of a defective child seat after the seat caused an injury for which the car rental agency was found liable. *Id.* at *1. Holding that the manufacturer was bound under Delaware's identical codification of § 607(5), the court wrote:

> Century contends that Hertz's defense of the child seat was inadequate, and that Hertz failed to introduce items such as product warnings. Century contends that

because the child seat was not defended in a manner that Century *would have* defended the action, Century is entitled to another bite at the apple. This argument flies in the face of Section 2-607(5). In fact, the purpose of this Section is to prevent attempts at relitigating issues that *should have* been decided in prior litigation, the exact situation occurring in this case. Century cannot stand idly by while litigation involving its product proceeds, and then claim, after the fact, that Hertz did a poor job. The way to correct this problem was to join in, or take over, the defense of the Missouri Action; not to wait until the dust settles and poke holes in Hertz's defense. Century is bound by the determinations made in the Missouri Action regarding the dangerous condition of the child seat and the amount of resulting damages.

*Id.* at *3 (emphasis in original).[2] Though voucher has largely been "supplanted by modern third-party pleading practice," it "continues to be employed, primarily in situations . . . where the vouchee is not subject to personal jurisdiction in the underlying action." *Master Blaster, Inc.*, 781 N.W.2d at 27 (citations omitted).

A "small exception" to voucher exists when the underlying proceeding is not a good faith, adversarial one. *Moldex, Inc. v. Ogden Engineering Corp.*, 652 F. Supp. 584, 587 (D. Conn. 1987). "A full dress, good faith, adversary proceeding has been defined as an 'actual trial by court rather than a resolving of those same issues by agreement of the parties under a prior settlement agreement.'" *Id.* at 587–88 (quotation omitted). It has also been called an "attempt by the parties to arrange the record . . . so as to use such record on a basis for judgment in the second action." *Id.* at 588 (citing *Grummons v. Zollinger*, 240 F. Supp. 63, 76 (N.D. Ind. 1964)). "Such conduct present[s] a serious risk of collusion and undermines the purpose of § 607(5) to hold a seller liable only after a conscientiously conducted defense was performed on its behalf." *Id.* (quotations omitted).

---

[2] FCCC distinguishes *Hertz Corp.* by pointing out that there was no limitation of remedies provision in that case. But this is a distinction without meaning. Whether liability incurred to a third party is direct or consequential damages is separate from whether voucher may bind a party. Simply put, the non-existence of a limitation of remedies provision is irrelevant to the decision of whether voucher may be applied.

To begin, Newmar presented FCCC with written notice of Mr. Roblin's litigation as required by IC 26-1-2-607(5)(a) and FCCC repeatedly declined to step in and defend. Additionally, applying voucher here will avoid duplicative litigation, the risk of inconsistent results, and will preserve judicial resources. In the language of the *Hertz Corp.* court, should FCCC fail to join the suit—as it did here—"it should not be entitled to reargue issues in a later suit that it *should have* raised in the original suit." 1999 WL 459291, at *3 (emphasis in original). And it is appropriate to apply voucher here because the Court lacked personal jurisdiction over FCCC in the underlying proceeding. *Master Blaster, Inc.*, 781 N.W.2d at 27; ECF No. 22.

FCCC still argues that the conflict of interest between Newmar and FCCC was strong enough to give Newmar "an improper incentive to guide any possible defeat in the direction of indemnification." Third-Party Def.'s Resp. 7, ECF No. 189. But FCCC has failed to identify evidence that the proceeding was an "attempt by [Newmar] to arrange the record." *Moldex, Inc.*, 652 F. Supp. at 588. Simply pointing out that Newmar may have had incentive to guide the litigation does not prove that Newmar acted on this motivation.

More importantly, and despite FCCC's critiques of Newmar's litigation strategy, Newmar did not fail to defend the chassis. Newmar submitted testimony that the service work performed on the chassis corrected any defects or problems and questioned whether there was a single nonconformity of the FCCC chassis. Third-Party Pl.'s Mot. for Part. Summ. J. 22. Newmar's submitted testimony and connected arguments shows that the underlying proceeding was "a contest of the issues for actual determination of the facts . . . and of law . . . rather than a resolving of those same issues by agreement of the parties under a prior settlement agreement." *Moldex, Inc.*, 652 F. Supp. at 587–88. While FCCC may have litigated that action differently, the fact that Newmar emphasized certain testimony more than other testimony was a matter of

strategy, not an attempt to arrange the record. *Id.* at 588. For FCCC, "[t]he way to correct this problem was to join in, or take over, the defense of the [underlying proceeding]; not to wait until the dust settles and poke holes in [Newmar's] defense." *Hertz Corp.*, 1999 WL 459291, at *3. FCCC has therefore not met its burden of establishing that the underlying proceeding was not a good faith, adversarial one.

The Court's decision to apply voucher binds FCCC "to any determination of fact common to the two litigations." *Uniroyal, Inc.*, 380 N.E.2d at 580. As the Court made clear in its original decision, "it is undisputed that the RV was out of service for more than 60 days and that three or more unsuccessful attempts were made to repair the RV's cooling systems, *which is part of the chassis*." Op. and Order 2, ECF No. 100 (emphasis added). FCCC is accordingly bound to: (1) "the existence of a breach of [Lemon Law] warranty as between [Newmar] and [Roblin]," (2) "the fact of [Newmar]'s liability to [Roblin]," and (3) "the amount of damages." *Blommer Chocolate*, 635 F. Supp. at 924.

## CONCLUSION

For the above reasons, Newmar's Motion for Partial Summary Judgment on its claim for contractual indemnity (ECF No. 173) is GRANTED and FCCC's Motion for Partial Summary Judgment (ECF No. 171) is DENIED.


IT IS SO ORDERED.

DATED this 30th day of December, 2020.


/s/ Michael J. McShane_____
Michael J. McShane
United States District Judge